UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALBERTO ROMO,<br><br>      Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>      Defendant. | No. 10 C 6044<br><br>Magistrate Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alberto Romo filed this action seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). 42 U.S.C. §§ 416, 423(d), 1381a. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff has filed a motion for summary judgment. For the reasons stated below, this case is remanded for further proceedings consistent with this opinion.

**I. THE SEQUENTIAL EVALUATION PROCESS**

To recover Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") under Titles II and XVI of the SSA, a claimant must establish that he

or she is disabled within the meaning of the SSA.[1] *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001); *Keener v. Astrue*, No. 06 C 0928, 2008 WL 687132, at *1 (S.D. Ill. 2008). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq*. The SSI regulations are virtually identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 *et seq*.

In addition, in cases such as the one before the Court, where an individual is determined to be disabled and entitled to benefits for a closed period, the Commissioner uses an eight-step sequential process to determine whether the claimant's disability continues. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5); *see Phillips v. Astrue*, 601 F. Supp. 2d 1020, 1028 (N.D. Ill. 2009). In applying the eight-step process, the Commissioner must determine:

1. Has the claimant engaged in any substantial gainful activity?
2. If not, does the claimant have an impairment or combination of impairments which meets or equals the severity of a listed impairment?
3. If not, has there been a medical improvement as shown by a decrease in medical severity?
4. Is the medical improvement related to the claimant's ability to do work?
5. If no to steps three and four, do any exceptions to medical improvement apply?
6. If yes to step four, are the claimant's current impairments severe in combination?
7. If the impairments are severe, can the claimant perform his past relevant work?
8. If not, can the claimant perform any other work?

20 C.F.R. §§ 404.1594(f), 416.994(b)(5); *see Phillips*, 601 F. Supp. 2d at 1028; *O'Reilly v. Astrue*, No. 11 C 1409, 2012 WL 1068780, at *7 (N.D. Ill. March 29, 2012).[2]

---

[2] For a Title XVI claim, the performance of substantial gainful activity is not an issue, and the analysis starts with step two. 20 C.F.R. § 416.994(b)(5); *see Eaton v. Astrue*, No. 11 C 1688, 2012 WL 620115, at *1 (S.D. Ind. Dec. 12, 2012).

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on September 21, 2007, alleging that he became disabled on December 21, 2006, due to right rotator cuff tendonitis, nerve damage, depression and diabetes. (R. at 10, 59–60, 123–32, 160, 164). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 10, 59–62, 92–93).

On July 1, 2009, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge ("ALJ"). (R. at 10, 19–58). The ALJ also heard testimony from James M. McKenna, M.D., a medical expert ("ME"); and James Breen, a vocational expert ("VE").[3] (*Id.*).

The ALJ partially granted Plaintiff's request for benefits on October 14, 2009. (R. at 10–18). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since December 21, 2006, the alleged onset date. (*Id.* at 14). At step two, the ALJ found that Plaintiff's rotator cuff injury is a severe impairment. (*Id.*). At step three, the ALJ determined that during the period from July 1, 2007, through October 13, 2008, Plaintiff's impairment did not meet or medically equal the severity of any of the listings enumerated in the regulations.[4] (*Id.*).

---

[3] The hearing transcript incorrectly referred to the VE as James Green. (*Compare* R. at 19–20 *with id.* at 113).

[4] Plaintiff requested benefits beginning in December 2006, when his company closed and he began drawing unemployment benefits. (R. at 14.) However, the ALJ determined that he was not disabled until July 1, 2007, shortly before he underwent decompression of the radial nerve of his right forearm. (*Id.*). Plaintiff does not contest this start date.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[5] and determined that from July 1, 2007, through October 13, 2008, Plaintiff lacked the RFC to perform even sedentary work. (R. at 14). Based on Plaintiff's RFC, the ALJ determined at step four that Plaintiff was unable to perform past relevant work as a factory line worker. (*Id.* at 15). At step five, based on Plaintiff's RFC, his vocational factors and the VE's testimony, the ALJ determined that from July 1, 2007, through October 13, 2008, there were no jobs that existed in significant numbers in the regional economy that Plaintiff could have performed. (Id. at 15–16). Accordingly, the ALJ concluded that Plaintiff was suffering from a disability as defined by the SSA from July 1, 2007, through October 13, 2008. (*Id.* at 16).

The ALJ then determined that medical improvement occurred as of October 14, 2008, and applied the eight-step sequential evaluation process applicable to medical improvement cases. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 21, 2006, the alleged onset date. (R. at 14). At step two, the ALJ determined that beginning on October 14, 2008, Plaintiff's impairment did not meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 16). At steps three and four, the ALJ found that a medical improvement occurred as of October 14, 2008, which was related to Plaintiff's ability to work. (*Id.* at 16, 17). Because the ALJ found that a medical improvement had occurred, step five is inapplicable here. At step six, the ALJ found that Plaintiff's rotator cuff injury was a severe impairment. (R. at 14).

---

[5] "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

The ALJ then assessed Plaintiff's RFC and determined that beginning on October 14, 2008, Plaintiff had the RFC to perform light work subject to no above shoulder reaching and no continuous flexion/reaching with the right elbow or arm. (R. at 16). Based on Plaintiff's RFC, the ALJ determined at step four that Plaintiff was unable to perform past relevant work as a factory line worker. (*Id.* at 17). At step five, based on Plaintiff's RFC, his vocational factors and the VE's testimony, the ALJ determined that beginning on October 14, 2008, there were jobs that existed in significant numbers in the regional economy that Plaintiff could perform, including work as fast food worker, cafeteria worker, and electrical helper. (*Id.* at 17). Accordingly, the ALJ concluded that beginning on October 14, 2008, Plaintiff was not suffering from a disability as defined by the SSA. (*Id.* at 18).

The Appeals Council denied Plaintiff's request for review on August 13, 2010. (R. at 1–4.) Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's

task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. DISCUSSION

Plaintiff raises five arguments in support of his request for a reversal and remand: (1) the ALJ's finding of medical improvement at step three was erroneous; (2) the ALJ's step two determination was erroneous; (3) the ALJ's determination at step four that Plaintiff's medical improvements related to his ability to work was

erroneous; (4) the ALJ's credibility determination was patently wrong; and (5) the ALJ's step seven and step eight determinations were erroneous. (Mot. 1, 6–12). The Court addresses each argument in turn.

**A. The ALJ's Medical Improvement Analysis**

Plaintiff contends that the ALJ erred in finding him medically improved as of October 14, 2008. (Mot. 7–10). Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). A finding of decreased medical severity must be based on "changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.*; *accord Blevins v. Astrue*, 451 F. App'x 583, 585 (7th Cir. 2011). "When, as here, the ALJ finds the claimant disabled for a closed period in the same decision in which [he] finds medical improvement, the severity of the claimant's current medical condition is compared to the severity of the condition as of the disability onset date." *Lymperopulos v. Astrue*, No. 09 C 1388, 2010 WL 960340, at *7 (N.D. Ill. Mar. 10, 2010).

The ALJ found medical improvement beginning on October 14, 2008, because on October 13, 2008, Plaintiff "was told by his primary care physician to seek other employment. He was told by his representative not to work until his worker's compensation case was settled." (R. at 16). After careful review of the record, the Court finds that the ALJ's decision is not supported by substantial evidence.

First, it is not clear that the medical record to which the ALJ cites is from October 13, 2008. Instead, it appears that the record is from a January 15, 2009 visit by Plaintiff to Amy R. Blair, M.D., Plaintiff's primary care physician. (R. at 787–91). The January 15, 2009 visit merely references that Plaintiff's last hemoglobin test was on October 13, 2008. (*Id.* at 790).

Second, Dr. Blair did not opine that Plaintiff was capable of performing full-time work. Instead, Dr. Blair diagnosed hypertension, diabetes mellitus, depression, rotator cuff injury, ulnar nerve injury and hearing loss. (R. at 789). She observed that Plaintiff's right upper extremity pain and weakness persists. (*Id.*). While Plaintiff was showing some shoulder improvement with physical therapy, he "continues to have pain at shoulder, elbow, ulnar hand, weak grip." (*Id.*). Dr. Blair also noted that Plaintiff's psychiatrist had stopped fluoxetine and started him on budepropion.[6] (*Id.*). Plaintiff reported lack of energy, negative thoughts and trouble getting out of bed. (*Id.*). Dr. Blair concluded that Plaintiff's nerve injury and persistent shoulder and right upper extremity pain "limit his ability to do manual work." (*Id.* at 790). Nevertheless, she encouraged Plaintiff to "seek alternate employment options" because "work is a key component of his mental health." (*Id.*). But Dr. Blair's conclusion that Plaintiff's depression is correlated with his inability to work does not necessarily mean that Plaintiff has the RFC to do physical and mental work activities on a sustained basis despite his limitations. *See* 20 C.F.R. §§ 404.1545, 416.945. Contrary to the Commissioner's assertion (*see* Resp. 6–7), there is simply no evi-

---

[6] Budeproprion is used to treat depression. <www.nlm.nih.gov/medlineplus.html>

dence that Dr. Blair has any expertise with Social Security regulations. Indeed, Dr. Blair may merely have opined that any kind of work, even if temporary, part-time or voluntary, would be beneficial to Plaintiff's mental health.

Finally, the ALJ does not cite to any improvement in Plaintiff's symptoms, signs or laboratory findings that would support a finding of medical improvement. "Before limiting benefits to a closed period, an ALJ must conclude either that a claimant experienced 'medical improvement' as evidenced by changes in the symptoms, signs, or test results associated with her impairments, or else that an exception to this rule applies." *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *see Blevins*, 451 F. App'x at 585 (A finding of medical improvement "must be based on improvement in the symptoms, signs or laboratory findings associated with the [claimant's] impairments.") (citing 20 C.F.R. § 404.1594(a), (b)(1)). The Commissioner contends that other record evidence, including testimony by the ME, supports the ALJ's finding that Plaintiff experienced medical improvement. (Resp. 7–8). The Court, however, must limit its review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 90–93 (1943); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("the government's brief and oral argument . . . seem determined to dissolve the *Chenery* doctrine in an acid of harmless error"). And here, the ALJ did not identify any symptoms, signs or test results upon which he was relying and did not reference the ME's testimony in his decision.

On remand, the ALJ shall reevaluate the medical evidence to determine whether there was an improvement in Plaintiff's symptoms, signs or laboratory findings that would support a finding of medical improvement.

**B. The ALJ's Determination of Plaintiff's RFC**

The ALJ found that Plaintiff's rotator cuff injury resulted in functional limitations. (R. at 14). After examining the medical evidence and giving partial credibility to some of Plaintiff's subjective complaints, the ALJ found that beginning on October 14, 2008, Plaintiff had the RFC to perform at a light level of exertion. (*Id.* at 16–17). Specifically, the ALJ concluded that Plaintiff could perform light work subject to no above shoulder reaching and no continuous flexion/reaching with the right elbow or arm. (*Id.* at 16). In comparing Plaintiff's RFC before and after October 14, 2008, the ALJ found that his functional capacity for basic work had increased. (*Id.* at 17). Plaintiff contends that the ALJ's RFC determination has no support from the medical record and lacks an assessment of Plaintiff's ability to function. (Mot. 9–11).

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); Social Security Ruling ("SSR")[7] 96-8p, at *2 ("RFC is an

---

[7] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

Here, the ALJ failed to construct a logical bridge between the evidence and the RFC. When Dr. Blair examined Plaintiff on January 15, 2009, she diagnosed not only rotator cuff and ulnar nerve injuries but also hypertension, diabetes mellitus, depression, and hearing loss. (R. at 789). The ALJ acknowledged Dr. Blair's assessment that Plaintiff's ulnar nerve injury and persistent shoulder and right upper extremity pain limit Plaintiff's ability to do manual work (*id.* at 17), but failed to acknowledge his depression, diabetes, hypertension and hearing loss in formulating Plaintiff's RFC. While Plaintiff did not properly draw his hypertension and hearing

loss to the ALJ's attention, Plaintiff did present his depression and diabetes as part of his application for benefits (R. at 61–62, 164); *cf. Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) ("[A]n ALJ is not obliged to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.") (citation omitted). The ALJ's failure to discuss Plaintiff's depression and diabetes is exacerbated by Plaintiff's symptoms having significant support in the medical record. (*See, e.g.*, R. at 222, 575, 786 (diabetes); *id.* at 576–77, 676, 692, 711–21, 819–22 (depression)). "The ALJ . . . may not choose to disregard certain evidence or discuss only the evidence that favors his or her decision." *Scott v. Astrue*, No. 08 C 5882, 2010 WL 1640193, at*11 (N.D. Ill. Apr. 22, 2010). Moreover, the ALJ must assess a claimant's RFC by "evaluating *all* limitations that arise from medically determinable impairments, even those that are not severe." *Villano*, 556 F.3d at 563 (emphasis added).

On remand, the ALJ shall reassess Plaintiff's RFC by "evaluating all limitations that arise from medically determinable impairments, even those that are not severe." *Villano*, 556 F.3d at 563. The RFC shall be "expressed in terms of work-related functions" and include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p. If the ALJ determines that a second hearing is required, he "must include *all* limitations supported by medical evidence in the record" in posing hypothetical questions to the VE. *Steele*, 290 F.3d at 942.

## C. Plaintiff's Credibility

Plaintiff contends that the ALJ erred in discounting his testimony about the nature and extent of his ailments. (Mot. 10–11.) He asserts that the ALJ's credibility determination was conclusory boilerplate and furnished no evidence to support his conclusion. (*Id.* 10).

In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support the claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record."

*Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p.

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted); *see* SSR 96-7p. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

In his decision, the ALJ made the following credibility determination:

> After considering the evidence of record, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible beginning on October 14, 2008, to the extent that they are inconsistent with the residual functional capacity assessment for the reasons explained below.
>
> Amy Blair, M.D. wrote on October 13, 2008 that [Plaintiff's] ulnar nerve injury and persistent shoulder and right upper extremity pain does limit [Plaintiff's] ability to do manual work, though [Plaintiff] stresses he would like to be working. She noted that she completed the disability paperwork but encouraged [Plaintiff] to seek alternate employment options prior to submitting the paperwork because she felt that work was a key component of [Plaintiff's] mental health.

(R. at 17). Under the circumstances, the reason provided by the ALJ for rejecting Plaintiff's credibility is not legally sufficient or supported by substantial evidence.

First, the ALJ's analysis is mere boilerplate that "yields no clue to what weight the trier of fact gave [Plaintiff's] testimony." *Parker v. Astrue*, 597 F.3d 920, 922

(7th Cir. 2010) (reviewing similar language and finding that "[i]t is not only boilerplate; it is meaningless boilerplate[; t]he statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony"); *see Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003) ("This is precisely the kind of conclusory determination SSR 96-7p prohibits. Indeed, the apparently post-hoc statement turns the credibility determination process on its head by finding statements that support the ruling credible and rejecting those statements that do not, rather than evaluating the [claimant's] credibility as an initial matter in order to come to a decision on the merits."). The ALJ does not explain which of Plaintiff's allegations were credible, which were incredible, or provide reasoning in support of his findings. *See Groneman v. Barnhart*, No. 06 C 0523, 2007 WL 781750, at *11 (N.D. Ill. March 9, 2007) ("The ALJ may have provided a *reason* for rejecting [claimant's] allegations—because he did not seek treatment and follow through with medication—but he did not provide *reasoning*.") (emphasis in original). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2.

Second, the ALJ failed to discuss the SSR 96-7p factors. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limi-

tations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, at *3; *accord Steele*, 290 F.3d at 941–42 ("According to Social Security Ruling 96-7p, . . . the evaluation must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.' Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed."). The ALJ's failure to analyze these factors warrants reversal. *See Villano*, 556 F.3d at 562 (because "the ALJ did not analyze the factors required under SSR 96-7p," "the ALJ failed to build a logical bridge between the evidence and his conclusion that [claimant's] testimony was not credible").

Finally, the ALJ fails to elucidate any statements made by Plaintiff that are inconsistent with the RFC or how Dr. Blair's statement contradicts Plaintiff's testimony. "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *4.

On remand, the ALJ shall reevaluate Plaintiff's complaints with due regard for the full range of medical evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).[8]

**D. Summary**

In sum, the ALJ has failed to "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth herein, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall reassess Plaintiff's credibility with due regard for the full range of medical evidence. The ALJ shall reevaluate whether medical improvement has occurred by fully engaging in the eight-step inquiry. The ALJ shall then reevaluate Plaintiff's physical and mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings.[9]

---

[8] Plaintiff also contends that the medical evidence may support meeting or medically equaling Listings 1.02, 12.04, or 12.06. (Mot. 9). Although an ALJ should provide the analysis, a claimant "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Unlike in *Ribaudo*, Plaintiff did not present any medical evidence supporting the position that his impairments meet or equal a particular listing. *See* 458 F.3d at 583. Two state-agency physicians concluded that Plaintiff's impairments did not meet or medically equal a listing (R. at 681–88, 693–706), and Plaintiff provided no medical opinion to the contrary. In light of the medical evidence, the ALJ's failure to refer to a specific listing is not a ground for remand in this case. *See Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009).

[9] Nothing in this ruling is meant to disturb the ALJ's conclusion that Plaintiff was under a disability from July 1, 2007, through October 13, 2008.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [Doc. 34] is **GRANTED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: January 23, 2013

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge